## CHARLES BORDA AND LEOPOLDO BORDA

*v.*

## WENCESLAO BORDA Y KULGKIST.

San Juan, Equity, No. 990.

BILL FOR ACCOUNTING BETWEEN COTENANTS.

Jurisdiction of Person—Domicil.
1. Domicil is changed by abandonment with intention not to return, and by taking up a new residence with intention of remaining. If the first domicil is clearly proved, and the fact of change is uncertain, the first remains the legal domicil.

Accounting—Cotenants.
2. Equity has original jurisdiction of accounting between cotenants, which is not disturbed by the enactment of a statutory remedy. Cotenancy is a quasi trust relationship.

NOTE.—For authorities discussing the question as to whether a domicil is lost by abandonment without intention of returning, before acquiring a new one, see note in 40 L.R.A.(N.S.) 986.

### Borda v. Borda y Kulgkist.

Quasi Trustee—Rules Less Formal.

    3. A trustee is required to keep accurate accounts, but a cotenant, being in possession for his own purposes as well as for the benefit of the co-owners, is not required to keep such accounts, provided he can make up a proper statement when required.

Accounting—Procedure.

    4. In a suit for accounting, the defendant need not file an account until it is determined by a preliminary decree that he should account. Whereupon the matter is referred to a master to state the account.

Trustee—No Advantage Taken of Relations.

    5. A trustee cannot take advantage of his fiduciary relation, and on the other hand the cestui que trust cannot do so as against him. Where a cotenant was compelled through nonaction of the other tenants to advance money for the common property, they cannot complain that he made purchases in his own name and makes reasonable charges for the use of the property he has bought.

Joint-Tenancy—Attorneys' Fees.

    6. Where a cotenant in possession employs attorneys for his own purposes and for those of the estate, in order to charge the estate, he must show clearly the value of the services rendered for the estate.

Opinion filed August 22, 1917.

---

## Statement of Facts.

The bill of complaint was filed March 21, 1917, and, after a motion to dismiss was denied, the defendant filed answer July 9, 1917. The bill shows that the parties are brothers and equal owners of the Hacienda Esperanza, a sugar-cane plantation near Manati. That after the termniation of a lease, the defendant as the only one of the three living in Porto Rico, took charge March 11, 1915, and operated it for joint account up to August 1, 1916. That on July 31, 1916, defendant

rendered an account of his management, a copy of which is attached as exhibit, showing total of sugar realized $120,809.11 and total balance in favor of the three owners $37,506.31. That this account is incomplete, false, and fraudulent, in that it includes $7,260 improperly charged for rent of bulls which were already the property of the owners of the Hacienda, $3,104.22 for hauling of cane done by bulls and carts already the property of said owners, and $4,110 for legal expense not incurred on behalf of Hacienda, but for the personal benefit of the defendant. Further, that defendant collected from one Caballero $2,779, which belonged to said owners, and as a second cause of action that defendant realized from the sale of cattle, bulls, railroads, and other personal property to Jaime Calaf the sum of $13,334, December 6, 1916, and retained the same on his own behalf when in fact it belonged equally to the owners of the property, and has not been accounted for. The answer admits some allegations, but denies that the bulls were the property of the joint owners or purchased with their funds. And likewise that the hauling of cane was with railway and other apparatus belonging to the said joint owners. That the $4,110 for legal services were incurred on behalf of said property, due to the unnecessary interference by the plaintiffs in the administration. He denies collecting anything from Caballero, and avers that his account rendered was true. And as to the second cause of action he says that the property sold Calaf was his own property and that plaintiffs had no interest therein. As a counterclaim, defendant sets up that he managed the property in question at his own expense, amounting to $41,780.99, and that the plaintiffs refused to contribute. The counterclaim goes into the matter of arbitration as between the

parties, and claims that two errors are made, to wit, $1,100, in the item of employees and $1,539.99 in another item against himself, and other payments he has had to make for shortage in weight and insurance, amounting to $1,843.98, for which he claims reimbursement.

Upon the trial, evidence was introduced on both theories of the fact, the amounts themselves not being greatly disputed. . It was shown that the defendant entered into possession of the Hacienda in question and managed it to the advantage of all concerned. That the plaintiffs declined to advance any money and that the expenditures had been made by the defendant out of his own funds. That his mayordomo was under the impres- sion that defendant was the sole owner and kept accounts on that theory, accounts in which the defendant had no hand. The parties differed as to all matters they had in common, and one result was that the Plazuela Sugar Company, with whom the defendant had contracted for the sale of the sugar, held up the payments, and litigation ensued, which was finally adjusted. That there was and is other litigation between the parties in the insular courts as well as in this court. Fees were paid attor- neys in these different matters, the parties having the same attorneys in personal as well as in Hacienda matters.

The testimony of the defendant himself was that he bought the bulls in question from the former tenant, Quintero; and at his request gave a note, instead of money, for personal rea- sons of Quintero, and that he used not only Quintero's bulls, but as many of his own in cultivating the plantation. That the rent he paid for the cattle was usual, and that he sold them afterwards to the new incoming tenant, Calaf, as his own prop- erty. That the item for hauling cane, etc., was for portable

Borda v. Borda y Kulgkist.

track, carts, and the like, which was handled in a similar manner. That the attorney's fees charged in the account were not for his personal affairs, which were paid separately, but for matters which he deemed connected with the Hacienda. There was further evidence, documentary and of witnesses. The receipt for amount paid to one attorney, Muñoz Morales, was as follows:

"For professional services rendered from December, 1915, to May 8, 1916, relative to the Hacienda Esperanza,—consultations, advice, and preparation of correspondence with the Plazuela Sugar Company—classification and arrangement of correspondence and documents; study and direction of the suit before the district court of Arecibo over judicial administration of the Hacienda Esperanza, attendance at the trial, preparation of evidence, oral argument and written briefs, trips to Manati, Arecibo, and Barceloneta—conferences with Messrs. Charles & Leopold Borda and their attorney, Mr. Martinez, regarding preliminaries to a settlement,—consulations almost daily, up to to-day, $2,000."

The charge of $2,000 paid another attorney, Molina, was part of the $3,000 paid him for all services, joint and personal. The $110 was an amount paid by order of this court under an injunction bond in the Plazuela case.

*Messrs. O. B. Frazer* and *Frank Martinez* for plaintiffs.

*Mr. H. G. Molina* for defendant.

Borda v. Borda y Kulgkist.

HAMILTON, Judge, delivered the following opinion:

1. The first matter to be determined relates to the jurisdiction of the court as dependent upon the citizenship of the parties. The evidence seems to show that plaintiff Carlos Borda is a resident of New York, and that plaintiff Leopoldo Borda is a resident of France. It is true that neither of them stays at the home in question all the time, and that both of them have been commorant in Porto Rico during the past winter. Both of them have property interests here, and Carlos Borda has bought a house in San Juan. The question of residence is one of intention, and that is often difficult to ascertain. In the case at bar the old English couplet of "a settlement is retained until a new one is gained," expresses the correct legal principle that an old residence is retained until it is proved that a new one has been obtained. To put the case more strongly for the defendant, the residence of the plaintiffs was in New York and France some time ago, and the evidence is not at all convincing that it has since been changed. The rule is that domicil is changed only by abandonment of the first place of domicil with the intention not to return, and by taking up residence in another place with the intention of permanently residing there. 9 R. C. L. 542. It may be added that not long since the defendant himself, in an affidavit in cause No. 974 in this court, stated that Carlos Borda was a resident of Bay Shore, Long Island, and that Leopoldo was a resident of Paris, France. It would seem from the evidence to be a fact, therefore, that this was at one time true, and there has been no satisfactory proof of any change. The court is therefore satisfied that it has jurisdiction of the matter, so far as relates to the parties.

Borda v. Borda y Kulgkist.

2. This is a suit in equity for an accounting, brought by two cotenants against the third, who is alleged to have been in the management and control of the common property and to have raised and disposed of a crop of sugar cane for the joint benefit. The basis of the bill is that a trust is involved to handle the property and its proceeds for all concerned. Mr. Freeman says that courts of equity have concurrent jurisdiction with courts of law of all matters of account between cotenants, and that a cotenant cannot be deprived of his recourse in equity because there is an adequate remedy at law, the point being that the facilities of a court of equity are superior in matters of account. Freeman, Cotenancy & Partition, § 321; 7 R. C. L. § 102. Where there is a fiduciary relation, equity will entertain jurisdiction of a suit for accounting, although the account is neither mutual nor complicated, and this applies to cotenants. Cotenancy would seem to be a quasi trust relationship. Pom. Eq. Jur. § 931; 39 Cyc. 185.

It is true the contested items are few in number, being two charges for rent of bulls,—one for rent of portable track, and two for attorneys' fees and expenses. It often happens that items apparently simple are totals of complicated circumstances, and in the case at bar there is the element of admitted representation by one cotenant of the interests of two others as well as his own. The law of Porto Rico affords special rules on the subject of cotenancy. Civil Code, §§ 405, 407. The bill, therefore, would seem to present a proper case for a bill for an accounting.

3. The relation of quasi trustee is governed by similar principles, but is not the same thing as the relation of a formal trustee. The word shows this, for "quasi" means simply in

Borda v. Borda.y Kulgkist.

the nature of, and may have many shades and varieties of meaning. Thus, in the case at bar the proof seems to be that the defendant was the only one of the three cotenants in Porto Rico, and took charge of a valuable property at the expiration of a lease, and managed it with the consent, express or implied, of the other two cotenants. The result has been that these other two did not advance any money for crop purposes, and that the defendant did advance a good many thousand dollars, besides giving his personal skill and attention to the management of the plantation. The result has been greatly to the advantage of all three owners. The dispute between them now relates to charges made by the defendant in his management, plaintiffs alleging that certain items should not be charged at all, because they related to personal matters of the defendant, and not to the joint property. In such a case the rules of trusteeship are not to be strictly required. For instance, ordinarily trustees are under the obligation to keep accurate accounts and render them whenever demanded. 29 Cyc. 464. In the case at bar no accounts were kept except by the defendant for his own purposes, and from these upon demand he made up the account now in dispute. A quasi trustee in a case such as the one at bar has fulfilled his duty if he has kept memoranda sufficient to make up an account when requisite. He is in possession primarily as owner and in his own interest, and is entitled to all the rights of individual ownership except that he must so act that he can make up and supply a proper accounting with his cotenants.

4. Some questions of pleading may be decided here. Thus, the defendant upon the hearing sought to prove that there was a mistake against himself in the account which he rendered to his cotenants, and argues that this should be corrected. He

X. Porto Rico.—10.

Borda v. Borda y Kulgkist.

does not file any cross complaint or pleading of that nature.  In
this respect, however, the proceedings on a bill for accounting
in equity are different from those in other cases.   The defend-
ant does not have to file any account until it is first determined
by a preliminary decree that he should account.   1 C. J. 639.
When this stage is attained the matter is referred to a master
to state the account; and justice will be done upon the evidence,
whether in favor of plaintiff or defendant, without reference
to the condition of the pleadings.   1 C. J. 639; Langdell, Eq.
Jur. 90.   This is much the same course that is taken when a
receiver, who is a trustee par excellence, files his account.   If
it should be determined there should be an accounting, that is to
say, that the account already passed between the parties is not
correct, then the whole matter will be reopened for considera-
tion.

5. Taking up, therefore, the question whether the account
as rendered before the suit was correct, it is attacked in the
first place in the item of $7,260 charged the Hacienda Esper-
anza, the joint property, for the rent of bulls which belonged
to the defendant himself.   There is no doubt that a trustee
cannot make money out of his trust estate.   He must act for
the beneficiaries, and not for himself.   He cannot derive profit
except the compensation allowed by law.   39 Cyc. 296.   Trus-
tees holding a position of trust and confidence are not allowed
to make profit from their office or to use the trust property for
their own personal advantage.   Perry, Trusts, § 427.

It is nevertheless true that, while one cannot take advantage
of a fiduciary relation, the converse is equally true; that is to
say, that the opposing party cannot mulct the quasi trustee
where he has bona fide expended property for the benefit of

Borda v. Borda y Kulgkist.

the so-called trust. The principle may be illustrated by a case of where a trustee buys up an outstanding debt for the benefit of the cestuis que trustent and they refuse to take it or pay the purchase money; in such case they cannot afterwards, when the purchase turns out to be beneficial, claim the benefit for themselves. Perry Trusts, § 428. In the case at bar the plaintiffs declined to advance money which would necessarily be required to operate a large sugar plantation, and thereby the defendant, to preserve his own interests as well as theirs, had to do so in a very large amount. It was in this way that he bought bulls and furnished others that he owned for this purpose. If plaintiffs would not advance the money necessary to buy the bulls, they cannot complain that the defendant did so in his own name and charges a reasonable amount for their use. Defendant testified that he sold them for what he paid for them, but the connection shows that he does not mean that he charged $7,260 for the rent of $13,334.40 worth of cattle. The amount charged was actually less, and the cattle sold were actually less, due to loss from death and otherwise. There is nothing before the court to show that this charge was improper, and the account cannot be reopened in this respect. The same will hold true of the item of $3,104.22 for cane hauling and the like.

6. The matter of attorneys' fees stands on a different footing. Defendant did not keep regular accounts, and did not take definite receipts from attorneys, covering in so many words services rendered to the Hacienda Esperanza alone. He paid amounts in bulk, and has attempted to separate so much as belonged to himself personally from those belonging to the Hacienda. The result, however, was not satisfactory. The

Borda v. Borda y Kulgkist.

presumption against a trustee when he mixes trust funds with his own personal funds is not strictly applicable in this case, but it cannot be said that the defendant has clearly separated the items of the attorneys' expense. Thus, the amount paid Muñoz Morales cannot be held to cover only the Hacienda litigation. The plaintiffs were owners like himself, and had the right to be represented by counsel in disputes, and defendant cannot charge up against them the expense of his differences with his co-owners. Indeed on the trial he did not attempt to do so, but he has not drawn a satisfactory line between what was personal and what concerned the estate that he represented. No satisfactory evidence was introduced on this point, and the court is not in condition to apportion the charge. It would seem that one half the $2,000 might well be charged against the Hacienda, but it is not clear that more should be. Similarly as to the charge of the attorney Molina. That all of this should be charged against the Hacienda is not clear, although no doubt some of it should be. As to the $110 in Borda v. Plazuela Sugar Co. 9 Porto Rico Fed. Rep. 64, this would seem to be a proper charge against the Hacienda, inasmuch as the suit was brought to carry out the contract made for joint benefit with the Plazuela Sugar Co., and the litigation, including this payment on the injunction bond, was due to the intervention of the plaintiffs, which in effect they afterwards abandoned by compromise agreement satisfactory to all interests.

On the other hand, no evidence was offered as to the counterclaim, and that need not, therefore, be considered.

It follows that there is no reason for disturbing the account heretofore rendered in any regard except in the matter of at-

torneys' fees, to wit, the item of $4,000. Some of this was properly charged, but the court has no means of determining how much, and an accounting will therefore be ordered in this regard.

Unless the parties agree otherwise, a decree will be entered referring an accounting in this matter to a special master according to the usual practice of courts of equity.

It is so ordered.